1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KEO L. VUE,                           No. CIV S-06-1818-CMK

12              Plaintiff,

13       vs.                               <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,

15              Defendant.

16   _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's

20   cross-motion for summary judgment (Doc. 21).

21                              **I.  BACKGROUND**

22              Plaintiff applied for disability insurance ("DI") and supplemental security income

23   ("SSI") benefits on August 10, 2004, based on disability.  In her applications, plaintiff claims that

24   her impairment began on September 7, 2003.  Plaintiff claims her disability consists of a

25   combination of headaches, dizziness, sleep issues, ringing in ears, shoulder/arm pain, back pain,

26   legs/knees pain, and mental disorder (depression).   Plaintiff, who is not a United States citizen,

was born October 15, 1959, and has had no formal education.

A. **Summary of the Evidence**

The certified administrative record ("CAR") contains the following: (1) medical records from Northgate Point, Dr. Luke Kim, covering the period from December 17, 2002, through August 3, 2004 (CAR 148-157); (2) a psychiatric review technique, Dr. Joseph Schnitzler, dated November 22, 2004 (CAR 158-171);(3) a mental residual functional capacity (RFC) assessment, dated November 22, 2004 (CAR 174-177); (4) an internal medicine consultative examination (CE), Dr. Martin, dated December 13, 2004 (CAR 178-180); (5) medical records from We Care Medical, Dr. Wu Hsiung Su, covering the period from January 16, 2003 through January 8, 2005 (CAR 183-211); (6) medical records from Turning Point covering the period from January 16, 2003 through April 7, 2005 (CAR 212-245); (7) medical records from Northgate Point, Dr. Shannon Suo, covering the period from July 31, 2003 through November 2, 2005 (CAR 248-260); and (8) psychological consultative examination, Dr. Nakagawa, dated January 24, 2006 (CAR 261-266).

2003

Plaintiff was seen by Dr. Su at We Care Medical Center on a number of occasions throughout 2003. Although some of the notes are illegible, they indicate plaintiff complained about and was treated for body pain, chest pain, depression, headaches, fatigue, anemia, shoulder pain and hand pain. On January 16, 2003, she was assessed with severe depression and started on Paxil and Votaren. She was also started on Feosal for anemia.

Plaintiff had an initial psychiatric evaluation at Northgate Point on July 31, 2003. She reported depressive symptoms including poor concentration and memory, and feeling overwhelmed. She also reported some auditory hallucinations and body pain. She was diagnosed with major depression, recurrent, severe with psychotic features. Dr. Kim noted she had some improvement with imipramine. She was to continue taking imipramine, and was prescribed Celexa, and Tylenol.

On October 14, 2003, plaintiff was seen for headaches and joint pain.  She had numbness and tingling on both forearms and hands.  It is noted in the chart that plaintiff's symptoms have improved with her medication.

2004

Plaintiff was also seen throughout 2004 by Dr. Su, complaining of sad mood, headaches, body and joint pain.  She was assessed with depression, osteoarthritis and lower back pain.  She continued to receive treatment for her anemia.

Plaintiff also continued to be seen at Northgate Point.  Plaintiff was seen on March 3, 2004 and reported she feels good when she takes her medication.  She was partially responsive to Prozac and imipramine, but had problems taking her medication consistently due to problems with her pharmacy and her understanding.  However, the doctor noted she had clearly improved with the Prozac.

On October 19, 2004, plaintiff reported she was still having headaches and joint pain, but her medication continued to help her depression.  She continued taking imipramine, Tylenol, Prozac, and Elavil.  Dr. Suo at Northgate Point noted plaintiff was clearly improved with Prozac, and increased her dosage.  She was assessed with major depression, recurrent, moderate.

Plaintiff had a psychiatric review conducted on November 22, 2004.  This review found plaintiff had depressive syndrome characterized by sleep disturbance, difficulty concentrating or thinking, hallucinations, and delusions or paranoid thinking.  Her limitations were identified as mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  There was insufficient evidence of decompensation, and the evidence did not establish the presence of the C criteria.  Plaintiff also had a mental RFC assessment, dated November 22, 2004, which found plaintiff moderately limited in her ability to understand, remember and carry out detailed instructions.  She was not found to be significantly limited in any other category.

1          On December 13, 2004, Dr. Martin performed an internal medicine CE.  Dr.

2    Martin found plaintiff's examination to be grossly normal.  Plaintiff reported back and hip pain,

3    but no weakness, numbness, incontinence or radicular symptoms.  Dr. Martin noted plaintiff's

4    cervical and dorsolumbar spine showed full movement.  Plaintiff was able to touch her toes,

5    squat and arise from a squatting position without obvious difficulty.  Plaintiff had normal range

6    of movement throughout.  Dr. Martin noted no obvious muscular asymmetry or atrophy was

7    appreciated, but noted minimal degenerative changes in several fingers and her skin on both

8    palms was somewhat rough and dry.  He found plaintiff's gait to be grossly normal, and she was

9    able to walk on her heels and toes.  Her grip strength was 5/5 bilaterally.  He found no functional

10   restrictions attributable to any medical conditions for plaintiff's age and habitus-appropriate

11   activities.

12         On December 17, 2004, Dr. Su completed an assessment of plaintiff.  Dr. Su

13   opined that plaintiff's physical abilities were fair for sitting, standing, ambulation, lifting, object

14   handling, vision, hearing, speaking, traveling, and balance.  But he rated her ability to carry, twist

15   and bend as poor.  He also opined that plaintiff's mental abilities were fair as to cognition,

16   persistence, judgment, and orientation; but her abilities were poor as to understanding, memory,

17   concentration, adaptation and social interaction.

18         <u>2005</u>

19         Plaintiff continued her treatment at Northgate Point.  She continued to complain

20   about headaches, shoulder pain, low back pain, neck pain, hand pain, and insomnia.  On January

21   21, 2005, plaintiff was seen on a complaint of headache and shoulder pain.  Her mental status

22   was noted as clear.   On February 22, 2005, plaintiff's assessment included depression and

23   insomnia.  The doctor's progress notes indicate plaintiff was anxious but emotionally stable.  She

24   was assessed with a GAF of 50/45.

25   / / /

26   / / /

On May 10, 2005, plaintiff reported her depression improved with the higher dose of Prozac.  Her mood was fairly euthymic, and affect was congruent.  She continued to have passive thoughts of death with no intent, and auditory hallucinations, but no visual hallucinations or delusions.  Dr. Suo found she was clearly improved with Prozac, and again increased her dosage.  Plaintiff was assessed with major depression, recurrent, moderate, which was partially responsive to Prozac and imipramine.  Her GAF was noted at 50/50.

<u>2006</u>

On January 24, 2006, plaintiff had a disability evaluation by Dr. Nakagawa.  Dr. Nakagawa observed that plaintiff  "seemed to be a fairly credible historian, but her performance on testing raised issues related to malingering."  (CAR at 261.)  During this examination, plaintiff was unable to correctly state the year, the month, or the day of the week.  Her mood was somewhat dysphoric, with affect constricted.  She was inconsistent in the sequential order of numerals 1 to 10, which raised questions regarding her effort on tasks.  Dr. Nakagawa performed a TONI-III test, and plaintiff failed to recall any items.  The pattern of responses suggested she was likely malingering for secondary gain.  On the TOMM test, plaintiff's results also indicated malingering.  She was only able to recall 29 out of 50 on Trial one and 33 out of 50 on Trial Two.  There were inconsistencies in what plaintiff recalled across trials.  Dr. Nakagawa noted that while plaintiff "seemed to be an adequate historian in interview, her performance on testing clearly indicated she was attempting to present in the worst possible light.  In other words, she was malingering.  As a result, it is impossible to provide any accurate assessment of her functional capabilities with respect to work."  (CAR at 263.)

**B.    Procedural History**

Plaintiff's claims were initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on November 21, 2005, before Administrative Law Judge ("ALJ") Robert C. Tronvig, Jr.

/ / /

1       At the administrative hearing, plaintiff testified that she is unable to read, write or

2  understand English.  She stated she could only do very limited housework, including washing a

3  few dishes only, and sometimes wiping up a bit.  Her children do most of the housework.  She

4  can lift a gallon of milk two to three times a day, can sit for a maximum of 20 minutes, and can

5  only walk about two blocks before getting weak and dizzy.  She stated she sees shadows and

6  hears voices.  She claims she was first diagnosed with depression in 2001 or 2002, and continues

7  to be severely depressed.  She continues to see a psychiatrist about once a month, and needs help

8  taking her medication.

9       In his March 27, 2006, decision, the ALJ made the following findings:

10    1.    The claimant meets the nondisability requirements for a period of
          disability and Disability Insurance Benefits set forth in Section 216(i) of
11         the Social Security Act and is insured for benefits through the date of this
          decision.
12
      2.    The claimant has not engaged in substantial gainful activity since the
13         alleged onset of disability.

14    3.    The claimant's recurrent moderate major depression is a "severe"
          impairment, based upon the requirements in the Regulations (20 CFR §§
15         404.1520 and 416.920).

16    4.    This medically determinable impairment does not meet or medially equal
          one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
17
      5.    The [ALJ] finds the claimant's allegations regarding her limitations are not
18         totally credible for the reasons set forth in the body of the decision.

19    6.    The claimant has the following residual functional capacity: an unlimited
          range of work physically and mental simple routine tasks (this is supported
20         by her recurrent moderate major depression).

21    7.    The claimant's past relevant work as in home care provider did not require
          the performance of work-related activities precluded by her residual
22         functional capacity (20 CFR §§ 404.1565 and 416.965).

23    8.    The claimant's medically determinable recurrent moderate major
          depression does not prevent the claimant from performing her past
24         relevant work.

25    9.    The claimant was not under a "disability" as defined in the Social Security
          Act, at any time through the date of the decision (20 CFR §§404.1520(f)
26         and 416.920(f)).

6

1   Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not

2   entitled to DI or SSI benefits.  After the Appeals Council declined review on June 16, 2006, this

3   appeal followed.

4   ## II.  STANDARD OF REVIEW

5           The court reviews the Commissioner's final decision to determine whether it is:

6   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

7   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

8   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

9   (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

10  conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

11  both the evidence that supports and detracts from the Commissioner's conclusion, must be

12  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

13  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

14  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

15  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

16  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

17  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

18  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

19  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

20  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

21  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

22  Cir. 1988).

23  ## III.  DISCUSSION

24          In her motion for summary judgment, plaintiff argues that the ALJ erred in five

25  ways in determining that she was not disabled.  Specifically, plaintiff argues: (1) the ALJ erred in

26  failing to include all of her severe impairments; (2) the ALJ erred in failing to evaluate her

1  obesity pursuant to SSR 02-01p; (3) the ALJ erred in rejecting the opinions of her treating

2  psychiatrist and physician; (4) the ALJ erred in failing to credit her testimony; and (5) the ALJ

3  failed to include all of her limitations in the hypothetical posed to the vocational expert.

4          **A. Medical Opinions**

5        Plaintiff claims that her treating physician opined her ability to carry, twist, and

6  bend as well as her understanding, memory, concentration, adaptation, and social interaction was

7  poor. She argues that the ALJ's rejection of this opinion as unsupported was wrong, the ALJ did

8  not provide specific and legitimate reasons for his rejection, and the ALJ failed to properly

9  develop the record. She claims the ALJ also erred in rejecting her mental health provider's

10  opinion because the examining psychiatrist's opinion is subject to interpretation and the ALJ

11  failed to address her low GAF scores.

12        The weight given to medical opinions depends in part on whether they are

13  proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d

14  821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating

15  professional, who has a greater opportunity to know and observe the patient as an individual,

16  than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285

17  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given

18  to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

19  (9th Cir. 1990).

20        In addition to considering its source, to evaluate whether the Commissioner

21  properly rejected a medical opinion the court considers whether: (1) contradictory opinions are

22  in the record; and (2) clinical findings support the opinions. The Commissioner may reject an

23  uncontradicted opinion of a treating or examining medical professional only for "clear and

24  convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

25  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

26  by an examining professional's opinion which is supported by different independent clinical

1  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

2  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

3  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

4  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

5  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

6  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

7  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

8  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

9  without other evidence, is insufficient to reject the opinion of a treating or examining

10  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

11  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

12  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

13  see also Magallanes, 881 F.2d at 751.

14          In his opinion, the ALJ explained that he could

15          only give Dr. Su's medical opinions minimal weight as he did not
           identify the impairment(s) that resulted in the limitations he
16          identified, and the chart notes attached to his assessment do not
           support the limitations he identified. Additionally, it is inconsistent
17          with the State Agency (SA) determinations; the physical
           limitations are inconsistent with the internal medicine consultative
18          evaluation (CE) performed by Dr. Martin; and the mental
           limitations are inconsistent with the psychological CE performed
19          by Dr. Nakagawa.  Lastly, they cannot be given more than minimal
           weight as there is no evidence that she required any
20          hospitalizations, treatment at a pain clinic or pain injections, or has
           undergone any surgery; there is no evidence of any group therapy;
21          and there is no evidence of any physical therapy, emergency room
           treatment, or treatment by specialists for her physical complaints.

22

23  CAR at 16 (citations omitted).

24          In addition, the ALJ found Dr. Martin's "examination was normal, except for

25  minimal degenerative changes noted in several fingers and palms somewhat rough and dry. . . .

26  Functionally, Dr. Martin indicated that based on objective findings and available information he

1    could find no functional restrictions attributable to medical conditions for age and habitus

2    appropriate activities."  CAR at 18.

3          As for plaintiff's psychological abilities, the ALJ found that her psychological CE

4    indicated she was malingering and the State Agency determined she could perform simple

5    routine tasks.  The ALJ found that the medical evidence showed plaintiff had recurrent moderate

6    major depression, which is a severe condition but not of listing severity.

7          Plaintiff argues that the chart notes attached to Dr. Su's assessment included

8    diagnoses for severe depression, anemia, osteoarthritis, lower back pain, and headaches.  She

9    argues that the limitations flowing from these impairments include joint pain, neck spasm,

10    swelling and tenderness; shoulder, arm, and hand numbness/pain; headaches; and fatigue and

11    insomnia.  She also takes issue with the ALJ's discussion of the lack of hospitalization, physical

12    therapy, treatment at a pain clinic, and diagnostic studies.

13          The ALJ rejected Dr. Su's assessment because it was contradicted by the CE and

14    was not supported by clinical findings.  There is no doubt that plaintiff was seen by Dr. Su for the

15    ailments she notes.  However, there is no indication that Dr. Su performed any examination

16    providing objective clinical findings to support his assessment.[1]  Had there been some physical

17    therapy or diagnostic studies, as the ALJ mentioned, it would have added support for Dr. Su's

18    assessment.  Whereas Dr. Martin's CE was comprised of a full examination with clinical

19    findings to support his assessment.  The ALJ was allowed to resolve the conflict between these

20    two physicians' assessments, which he did and provided specific and legitimate reasons for his

21    decision.  That decision is supported by substantial evidence.  As to the ALJ's statement that he

22    did not understand Dr. Su's assessment of plaintiff's abilities, there was no need for the ALJ to

23    develop the record further.  There was clearly a conflict in the physicians' assessments of

24

25
26
        [1]     A significant amount of the chart notes from Dr. Su are illegible.  However, from what the court can interpret, there are no clinical findings from Dr. Su.  The chart notes include subjective complaints from plaintiff.  In addition, neither party points to any clinical findings, beyond the blood work done for anemia.

1  plaintiff's abilities.  The ALJ resolved the conflict, and the record was adequate to allow for

2  proper evaluation of the evidence.

3            Plaintiff also argues the ALJ erred in discrediting the opinions of her mental

4  health providers because the psychological CE could have been interpreted differently.  She

5  suggests that the diagnostic impression of malingering could be wrong and plaintiff's low test

6  scores could reflect her low intelligence, memory problems, and/or confusion, which would be

7  consistent with Dr. Su's opinion.  She also argues that the ALJ's failure to consider her low

8  global assessment of functioning (GAF) was in error.  However, plaintiff's interpretation of Dr.

9  Nakagawa's psychological CE is questionable.  Plaintiff was assessed a GAF of 45-50 by one

10  physician.  However, this is just one piece of evidence.  Taking the record as a whole, the ALJ's

11  decision to reject plaintiff's treating physician's opinion, and accept the examining physicians'

12  opinions based on independent clinical findings, was within his discretion and is supported by

13  the record as a whole.

14            **B.  Credibility**

15            Plaintiff claims the ALJ erred in discrediting her testimony about her pain and

16  other subjective symptoms.  She argues she produced reliable medical evidence of her

17  impairments, but the ALJ rejected her testimony because he rejected her treating physician's

18  opinions.

19            The Commissioner determines whether a disability applicant is credible, and the

20  court defers to the Commissioner's discretion if the Commissioner used the proper process and

21  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit

22  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

23  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

24  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

25  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

26  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

11

1    credible must be "clear and convincing."  See id.

2            If there is objective medical evidence of an underlying impairment, the

3    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

4    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

5    341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of

6    the symptoms alleged, including aggravating factors, medication, treatment, and functional

7    restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1)

8    the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

9    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

10   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

11   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

12   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

13           Here the ALJ found plaintiff non-mental and pain complaints not credible because

14           the SA determined she did not have a severe physical impairment;
             Dr. Martin's internal medicine CE revealed upon physical
15           examination only minimal degenerative changes noted in several
             fingers and palms somewhat rough and dry, assessment was
16           musculoskeletal complaints of unclear etiology or functional
             significance, and functionally Dr. Martin indicated that based on
17           objective findings and available information he could find no
             functional restrictions attributable to medical conditions for age
18           and habitus appropriate activities; records from Northgate Point
             RST do not contain clinical or diagnostic evidence to support any
19           of her non-mental or pain complaints or her . . . functional
             limitations she alleged at the hearing; there is no evidence of any
20           hospitalizations or emergency room treatment; there is no evidence
             of any physical therapy or treatment at a pain clinic; there is no
21           evidence of any pain injections; there is no evidence of treatment
             by specialists such as a neurologist; there are no diagnostic studies
22           related to her back, shoulder, neck, right arm, or chest pain;
             examinations have not documented that she appeared fatigued or
23           was sleep deprived; no physical difficulties were observed when
             she filed her application; there is no evidence of surgery performed
24           or recommended; and she indicated in her application for
             Supplemental Security Income payments that she did not need help
25           with personal care, hygiene or upkeep of a home.

26   CAR at 18 (citations omitted).

1    The ALJ found plaintiff's mental complaints "cannot be found fully credible

2 because the SA determined she could perform simple routine tasks."  For additional support for

3 this finding, the ALJ points to Dr. Nakagawa's psychological CE, which raised issues related to

4 malingering, including her poor performance on the tests.

> Further eroding her mental complaints are the records from
> Northgate Point RST that document on December 17, 2002 she
> reported feeling better, auditory hallucinations improved and MSE
> was normal except for a blunted affect, October 14, 2003 her
> symptoms were improved with medications, March 3, 2004 her
> auditory hallucinations were improved with medications and mood
> was less dysphoric, October 19, 2004 her major depression was
> noted to be clearly improved with Prozac, January 21, 2005 she
> was mentally clear, and February 27, 2005 she was emotionally
> stable, and these records show that with treatment her mental
> condition had improved.

11 CAR at 18-19 (citation omitted).

12    Finally, the ALJ points to the lack of any evidence of hospitalizations or crisis

13 center contacts, her ability to perform daily activities at least consistent with unskilled work,

14 treatment records which did not diagnose her recurrent major depression as severe, and the lack

15 of evidence or testimony that she sought help from United Way organizations for her mental

16 complaints, as support for finding her mental complaints not fully credible.

17    The ALJ found plaintiff's mental complaints only partially credible.  He did so

18 stating specific, cogent reasons, which are supported by the record as a whole.  There is evidence

19 in the record to suggest the possibility that plaintiff was malingering, conflicting medical

20 opinions, a lack of clinical findings and no additional treatment options.  The majority of the

21 evidence in the record consists of plaintiff's subjective complaints, not objective medical

22 findings.  The undersigned finds the ALJ opinion is reasonably supported by substantial

23 evidence, and the court defers to the Commissioner's discretion.

### C.  Severe Impairments

25    Plaintiff claims the ALJ erred in finding the only severe impairment plaintiff had

26 was due to her moderate major depression, and completely discounting her obesity, anemia,

headaches, and osteoarthritis as severe impairments.  Plaintiff states that these impairments were well documented in her medical records.  She claims the anemia was based on laboratory testing, and the obesity was based on recorded weights over time.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

In this case, the ALJ found plaintiff's recurrent moderate major depression a severe impairment, but not severe enough to meet or medically equal the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  He also considered plaintiff's subjective complaints, "noting she alleges headaches, leg and ankle pain, mental problems, dizziness, poor sleep, back pain, depression, shoulder pain, knee pain, and anxiety."  (CAR at 17).  In examining the medical

---

[2]  Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

evidence plaintiff presented, the ALJ noted plaintiff had been treated "for depression diagnosed as recurrent moderate major depression, headaches, fatigue, low back pain, anemia, shoulder pain, neck pain, joint pain, right arm pain, heel spurs, dizziness, atypical chest pain, and insomnia." CAR at 15-16.

As to plaintiff's subjective complaints, the ALJ found plaintiff not completely credible, a finding he supported with specific, cogent reasons. He also found the medical opinion of Dr. Su was not supported, and that the CE performed by Dr. Martin found plaintiff's physical examination normal. The medical records do support plaintiff's claim that she suffered from anemia, but there is no indication of any limitation based on that ailment. Similarly, there is no credible indication that she suffered from any limitations based on any of the physical ailments she suffers. That is not to say she does not suffer from any or all of these ailments, but that there is no indication that she is substantially limited in her ability to function because of the ailments.

In addition, when the ALJ determined plaintiff's RFC, the ALJ considered all of plaintiff's symptoms, including pain. He found plaintiff's RFC was not eroded by any of her non-mental or pain complaints, and her daily activities were only mildly to moderately limited. He found plaintiff retained the ability to perform "an unlimited range of work physically and mental simple routine tasks." CAR at 19.

However, at the hearing, the ALJ called a vocational expert (VE) to testify. He posed two questions to the VE. The first included a hypothetical person, with the same age and education as plaintiff, with the capacity to do medium work. The VE testified that the hypothetical person could perform plaintiff's past relevant work as it is "generally described in the economy" but not as she performed it. The second question involved a hypothetical person with the same education as plaintiff, with a light physical FRC with the inability to carry, twist, and bend, limited to simple routine repetitive tasks not performed in a fast-paced production environment involving only simple work-related decisions and generally relatively few workplace changes, non-English speaking, reading, or writing, and no stooping or bending. The

1  VE testified that based on this hypothetical, there would be jobs in the local economy this person

2  could perform, including fruit cutter, picking table worker and potato chip sorter.

3         The ALJ found plaintiff could perform her past relevant work.  However, even if

4  the ALJ had credited plaintiff's treating physician's opinion and accepted the limitations her

5  doctor set forth, the VE testified there were jobs in the local economy plaintiff could perform.

6  The ALJ did not err in his finding of plaintiff's severity impairments.  Nevertheless, even if he

7  had, the outcome would have been the same as the VE testified to jobs plaintiff could perform

8  within the limitations based on all of her claimed ailments.  Therefore, any error would have

9  been harmless.  See Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006).

10        **D.  Obesity**

11        Plaintiff claims the ALJ erred in failing to assess the impact of her obesity, either

12  alone or in conjunction with her other impairments.  She claims her Body Mass Index (BMI) is in

13  excess of 30, which indicates obesity.  She argues that she suffered from limitations because of

14  her obesity, including fatigue and physical and mental inability to sustain work activities.

15        In 1999, obesity was removed from the Listing of Impairments.  Obesity may still

16  enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's

17  musculoskeletal, respiratory, or cardiovascular system."  Celaya v. Halter, 332 F.3d 1177, 1181

18  n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to

19  consider obesity in a multiple impairment analysis, but only where it is "clear from the record

20  that [the plaintiff's] obesity . . . could exacerbate her reported illnesses."  Id. at 1182; see also

21  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that

22  a multiple impairment analysis is not required where "the medical record is silent as to whether

23  and how claimant's obesity might have exacerbated her condition" and "the claimant did not

24  present any testimony or other evidence . . . that her obesity impaired her ability to work").

25  Where a multiple impairment analysis is not required, the ALJ properly considers obesity by

26  acknowledging the plaintiff's weight in making determinations throughout the sequential

1   analysis.  See Burch, 400 F.3d at 684.

2            As defendant notes, plaintiff did not include obesity as an impairment through the

3   process of her claim.  Therefore, she did not specifically indicate how her obesity exacerbated her

4   condition.  She argues that the medical records and testimony documented that she suffered from

5   limitations including an inability to sustain a function over time and fatigue which affected her

6   physical and mental ability to sustain work activity.  She again points to Dr. Su's assessment of

7   her inability to carry, twist, and bend as well as her limited abilities in her understanding,

8   memory, concentration, adaptation, and social interaction.

9            However, there is nothing in the record to indicate that her obesity caused her any

10  limitation in her function or exacerbated any of her conditions.  The medical records do note

11  plaintiff's height and weight, but there are no medical findings to indicate her weight caused any

12  of the symptoms she argues.  In addition, as already discussed, the ALJ included these limitations

13  in an alternate hypothetical for the VE, who found jobs in the local economy plaintiff could

14  perform even with these limitations.  Plaintiff bears the initial burden of proving a disability.  She

15  has failed to do so with regards to her obesity, and the ALJ did not commit reversible error in not

16  considering the effects of her obesity.

17            **E.  Hypothetical Question**

18            Plaintiff claims the ALJ erred in failing to include all of her limitations in the

19  hypothetical posed to the VE, and in finding she could perform her past relevant work as a care-

20  giver.

21            Hypothetical questions posed to a vocational expert must set out all the

22  substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

23  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

24  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

25  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

26  the ALJ may pose to the expert a range of hypothetical questions, based on alternate

17

1   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

2   determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

3   Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

4              As discussed above, at the hearing the ALJ posed two hypotheticals to the VE.

5   The first included a hypothetical person, with the same age and education as plaintiff, with the

6   capacity to do medium work.  The VE testified that the hypothetical person could perform

7   plaintiff's past relevant work as it is "generally described in the economy" but not as she

8   performed it.  The second question involved a hypothetical person with the same education as

9   plaintiff, with a light physical FRC with the inability to carry, twist, and bend, limited to simple

10  routine repetitive tasks not performed in a fast-paced production environment, involving only

11  simple work-related decisions and generally relatively few workplace changes, non-English

12  speaking, reading, or writing, and no stooping or bending.  The VE testified that based on this

13  hypothetical, there would be jobs in the local economy this person could perform, including fruit

14  cutter, picking table worker and potato chip sorter.

15             The ALJ found plaintiff had the RFC to perform her past relevant work.  As

16  discussed above, this finding was supported by substantial evidence in the record as a whole.

17  Accordingly, the hypothetical question posed to the VE, and relied upon by the ALJ, that a

18  person in plaintiff's position with the ability to perform medium work was not reversible error.

19  In addition, the ALJ went one step further.  In addition to setting out a hypothetical including the

20  limitations the ALJ found to be supported by the record, he posed another hypothetical to the VE

21  including the limitations assessed by plaintiff's treating physician.  Even with these limitations,

22  the VE testified that there were jobs plaintiff could perform.  Plaintiff's embellishment of her

23  limitations to the extent that she is unable to perform any work on a sustained basis, no matter

24  the physical exertional level, is not supported by the evidence.

25  / / /

26  / / /

1    The undersigned finds the ALJ properly included the limitations supported by the

2    record.  The ALJ did not commit reversible error in giving only minimal weight to plaintiff's

3    treating physician's opinion or in not crediting plaintiff's subjective complaints.  He therefore did

4    not commit reversible error in deciding the severity of plaintiff's impairments, failing to assess

5    her obesity, or in failing to include additional limitations in the hypotheticals presented to the

6    VE.

7                                    **IV.  CONCLUSION**

8    Based on the foregoing, the court concludes that the Commissioner's final

9    decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

10   ORDERED that:

11       1.    Plaintiff's motion for summary judgment is denied;

12       2.    Defendant's cross-motion for summary judgment is granted; and

13       3.    The Clerk of the Court is directed to enter judgment and close this file.

14

15   DATED:  May 28, 2008

16

17   **CRAIG M. KELLISON**
     UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26